CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar Number 14853

BRIANNA SMITH
Assistant United States Attorney
Nevada Bar No. 11795
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Brianna.Smith@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BLAKE and JENNA, individually and on behalf of C. M., a minor child, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: 2:19-cv-01293-APG-VCF <br><br> **Defendant's Motion for Appointment of Expert under Federal Rule of Evidence 706** |

### I. Introduction and Background

This medical malpractice case involves obstetrical and resuscitative care that was provided to plaintiff Jenna Miller and her child, C.M., during the prenatal and peripartum period. A central part of this case is plaintiffs' allegation that Baxter Tharin, M.D., a diagnostic radiologist employed by the United States, failed to identify "several masses underlying the placenta that were consistent with chorioangiomas" on plaintiff Jenna Miller's fetal anatomy ultrasound taken at about 20 weeks gestation. ECF No. 1, Complaint at 5.3. Plaintiffs aver that if the "masses" had been identified by Dr. Tharin on the ultrasound, Ms. Miller's pregnancy would have been designated as high-risk and her care would have transitioned to a maternal-fetal medicine specialist for close monitoring of the chorioangiomas and any complications. *Id.*

Relevant to this motion are issues concerning the standard of care in the field of diagnostic radiology. Diagnostic radiology is a complex science and involves the interpretation of imaging in many specialized areas.[1] Dr. Tharin strongly maintains that his interpretation of the 20-week ultrasound was normal and within the applicable standard of care. Both parties have designated experts in the area of diagnostic radiology to opine on the relevant standard of care. The United States' expert in radiology, Anthony Filly, M.D., opined that the ultrasound was interpreted correctly and within the standard of care.[2] In contrast, plaintiffs' expert, Randall Patten, M.D., opined that Dr. Tharin breached the standard of care in his interpretation of the ultrasound because they claim there are certain findings that required further follow up.[3]

Pursuant to Federal Rule of Evidence 706, the United States respectfully requests the Court to appoint a neutral diagnostic radiologist to assist the Court in evaluating issues concerning the applicable standard of care in this case. As explained in the memorandum of points and authorities below, the Court should appoint an expert because an impartial expert's opinions will assist the Court with difficult and technical central aspects of the case.

## Memorandum of Points and Authorities

### I. Legal Standard for Court-Appointed Experts under FRE 706

**A.    Federal Rule of Evidence 706**

Rule 706 of the Federal Rules of Evidence gives a trial court discretion to "[o]n a party's motion, or on its own . . . order the parties to show cause why expert witnesses should not be appointed . . . ." FRE 706(a). The power of a court to appoint a neutral expert witness is not only expressly provided by Rule 706, it is also inherent to a court's performance of its decision-making functions. *See United States v. Green*, 544 F.2d 138, 145

---

[1] *See* https://www.acr.org/Practice-Management-Quality-Informatics/Practice-Toolkit/Patient-Resources/About-Radiology (last accessed March 1, 2021).

[2] *See* **Exhibit A,** Expert report of Anthony Filly, M.D.; **Exhibit B**, Supplemental expert report of Anthony Filly, M.D.; and *Curriculum Vitae* at **Exhibit C**.

[3] *See* **Exhibit D**, Expert report of Randall Patten, M.D.

2

(3d Cir. 1976); *Scott v. Spanjer Bros.*, 298 F.2d 928, 930 (2d Cir. 1962) ("Appellate courts no longer question the inherent power of a trial court to appoint an expert under proper circumstances.").

Federal Rule 706 provides that the court "may ask the parties to submit nominations" as to the expert to be appointed and "may appoint any expert that the parties agree on" or "any of its own choosing." FRE 706(a). The expert appointed must consent and be informed of his duties by the court in writing, or "at a conference in which the parties shall have the opportunity to participate." *See* FRE 706(a)–(b). Following the appointment, the expert must "advise the parties of any findings," and may be deposed by either party, and called to testify "by the court or any party." FRE 706(b). The expert's testimony is subject to cross-examination by each party, "including the party that called the expert." *Id.*

A court-appointed expert is entitled to reasonable compensation, and the process for determining that compensation is outlined in subsection (c) of Rule 706. FRE 706(c). In addition, Rule 706 "does not limit a party in calling its own experts." FRE 706(d)–(e).

**B.     Courts' Utilization of Court-Appointed Experts**

An expert appointed under Rule 706 "does not serve as an advocate for any party . . . [but as] an unbiased, neutral expert" whose appointment would "promote accurate fact finding" or whose testimony "would be particularly helpful [in] evaluating complex or confusing evidence, such as scientific, technical, or other specialized knowledge." *Cepero v. Las Vegas Metro. Police Dep't*, No. 2:11-cv-01421-JAD-NJK, 2019 WL 2616179, at *1 (D. Nev. June 26, 2019) (citing *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011); *Ledford v. Sullivan*, 105 F.3d 354, 358–59 (7th Cir. 1997)). "[T]he purpose of Rule 706 is to appoint independent experts that will aid the Court." *Locascio v. Balicki*, No. 07-4834 (RBK), 2010 WL 5418906, at *3 (D.N.J. Dec. 23, 2010) (quotation and citation omitted).

The Ninth Circuit has approved district courts' discretionary decisions to appoint neutral experts where the parties present contradictory scientific evidence. *See, e.g.,* W*alker v. Am. Home Shield Long Term Disability Plan,* 180 F.3d 1065, 1071 (9th Cir. 1999). Federal

3

appellate courts recognize that under Rule 706, a court has the inherent power "to appoint [its] own expert witnesses, rather than leave [itself] . . . completely at the mercy of the parties' warring experts." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 665 (7th Cir. 2002) (citing *Ford ex rel. Ford v. Long Beach Unified Sch. Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002); *Meister v. Med. Eng'g Corp.,* 267 F.3d 1123, 1125 & n.3 (D.C. Cir. 2001).

The complexity of the relevant issue is also frequently cited as the determinative factor for appointing experts under Rule 706. *See Ford v. Mercer Cnty. Corr. Ctr.*, 171 F. App'x 416, 420 (3d Cir. 2006) ("The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance.") (quotation and citations omitted). A court's independent expert might be particularly helpful where there is "extreme variation" between the parties' expert witnesses. *E. Air Lines v. McDonnell Douglas Corp.*, 532 F.2d 957, 999 (5th Cir. 1976); *see also Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 558 F.3d 1341, 1348 (Fed. Cir. 2009) (holding under Ninth Circuit precedent, "[t]his court perceives no abuse of discretion in this case where the district court was confronted by what it viewed as an unusually complex case and what appeared to be starkly conflicting expert testimony."). A court's decision to appoint a neutral, independent expert is reviewed for an abuse of discretion. *Walker*, 180 F.3d at 1071.

## II. Argument

**A.     The Court Should Appoint an Independent Expert in Diagnostic Radiology**

The Court should appoint an expert in diagnostic radiology, with a subspecialty or expertise in reviewing fetal anatomy ultrasounds. Such an appointment would assist the Court in assessing the complex and technical aspects surrounding the interpretation of the 20-week ultrasound and whether Dr. Tharin breached his duty of care by not recognizing "masses" and/or diagnosing chorioangiomas. The parties' expert witnesses have presented "extreme variations" in the interpretation of the ultrasound and the appointment of an independent expert would aid the Court in its ultimate fact-finding responsibilities. *See E. Air Lines, Inc.*, 532 F.2d at 999; *see also Monolithic Power Sys., Inc.*, 558 F.3d at 1348.

In this case, plaintiffs allege that the United States is liable for medical malpractice under the Federal Tort Claims Act due to "substandard—and therefore negligent—medical and hospital care including but not limited to: [the United States'] failure to diagnose multiple chorioangiomas, [and] failure to designate Jenna Miller's pregnancy as high risk." Complaint, ECF No. 1 at ¶ 5.1.  Prior to the filing of this lawsuit, Plaintiffs sought damages in excess of $75,000,00.00.  ECF No. 1 at ¶ 4.4.  In this litigation, plaintiffs have disclosed a life care plan which forecasts substantial future damages in the range of $15,609,535.00 to $22,985,214.00, plus "potential care needs" of an additional $575,434.00.

As to plaintiffs' allegation that Dr. Tharin breached the standard of care in his interpretation of the 20-week fetal ultrasound, the parties have designated experts who have disclosed expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2). The relevant experts include a diagnostic radiologist, Randell Patten, M.D., for the plaintiffs[4]; and Anthony L. Filly, M.D., a diagnostic radiologist for the United States.  Both experts hold themselves out to be qualified in diagnostic radiology and have expertise in interpreting fetal anatomy ultrasounds.  *E.g.,* Ex. C.

Dr. Patten opines that the May 20, 2015 ultrasound shows "[o]n multiple images, there are heterogeneous and mildly hypoechoic masses along the basal chorionic plate and retroplacental complex. These areas persist throughout the examination." Patten Report, attached hereto as Exhibit D at 2–3.  He also opines that there are low-level echoes throughout the amniotic fluid. *Id.* at 4.[5]  Dr. Patten concludes that "[t]he differential diagnosis for these findings primarily includes multiple maternal uterine fibroids and placental chorioangiomas" that should have been noted on the ultrasound report. *See id.* at 4.  In contrast, Dr. Filly opined that the ultrasound was normal and the interpretation of

---

[4] Plaintiffs also disclosed another expert in maternal fetal medicine (Dr. William Roberts) to render standard of care opinions as to the interpretation of the fetal ultrasound.

[5] Plaintiffs' expert Dr. Roberts disagrees with Dr. Patten about whether echogenicity is an abnormal finding. *Deposition testimony to be supplemented.*

the ultrasound was within the standard of care. Filly Report, attached hereto as Exhibit A at 1 and supplemental report at Exhibit B.

Interpreting fetal ultrasounds is a complex scientific subject.[6] It is important to understand that there is variance in interpretation of films amongst radiologists. *See id*. Diagnostic Radiology is an area of study beyond a trier-of-fact's ability to adequately understand without assistance. Examination of the experts' reports shows that the parties' experts have reached the opposite conclusions with extreme variations. Further, the implication of malpractice on the part of the United States' diagnostic radiologist merits the designation of a fair and neutral expert. Plaintiffs' request for more than $70,000,000.00 in damages provides additional support for the Court's appointment of an independent diagnostic radiologist. The court-appointed expert would opine on a key issue of the case—whether Dr. Tharin breached the standard of care in his interpretation of the 20-week ultrasound. Such an appointment would assist the Court with the difficult and technical aspects of the case in its fact-finding responsibilities and would be well within the Court's "wide latitude" to appoint an independent expert under Rule 706. *See Monolithic Power Sys., Inc.*, 558 F.3d at 1348 ("[U]nder Ninth Circuit law, district courts enjoy wide latitude to make these appointments."). Accordingly, the Court should grant this motion and either request the parties to submit suggestions for the Court's consideration or appoint a diagnostic radiologist on its own as permitted under Rule 706.

B.   **The Proposed Terms for the Retention of the Court-Appointed Expert**

**Qualifications:** The expert should be qualified in diagnostic radiology and review fetal anatomy ultrasounds as part of his or her practice.

---

[6] In fact, plaintiffs' own experts (Dr. Roberts an Dr. Patten) disagree about whether one of the findings of the 20-week fetal ultrasound is abnormal. Separately, as further illustration of the complexity of radiology interpretation, both plaintiff and defendant's neuroradiology experts differ with the interpretation of brain imaging read by a third-party in this case. *See* **Exhibit E,** Excerpt of Deposition of Jill Hunter, M.D. at pages 73:7-77:1-20 (plaintiff's neuroradiologist explaining reasons why brain imaging interpretation differed).

**Conflict of Interest:** The appointed expert should not have any material connection or know either party, the party's attorneys, or retained experts, financially or otherwise. The parties should screen the name of the proposed expert and confirm no known conflict exists.

**Expert's Role:** The sequence of the expert's review should be as follows:

(1) The appointed expert will review and interpret two fetal anatomy ultrasounds as the applicable standard of care for September 2015 required. One ultrasound will be the subject ultrasound (dated May 20, 2015) and a second ultrasound from plaintiff's prior pregnancy (dated October 27, 2011);[7]

(2) Upon review and interpreting these films, the expert will prepare 2 reports (one for each ultrasound) identifying the ultrasound findings required by the applicable standard of care by a diagnostic radiologist interpreting 20-week fetal anatomy ultrasounds.

The appointed expert will also offer assistance regarding the interpretation of the ultrasounds to the fact-finder. *See also*, FRE 706(b).

### III.  Conclusion

The Court should grant the United States' motion and appoint a neutral diagnostic radiologist, with expertise in the review of fetal anatomy ultrasounds, pursuant to Federal Rule of Evidence 706. The court-appointed diagnostic radiologist will provide valuable independent opinions about a key issue of this case, namely, the applicable standard of care required of a diagnostic radiologist interpreting a 20-week fetal anatomy ultrasound.

Respectfully submitted this 15th day of March 2021.

> CHRISTOPHER CHIOU
> Acting United States Attorney
>
> */s/ Brianna Smith*
> BRIANNA SMITH
> Assistant United States Attorney

---

[7] The United States requests two ultrasounds be reviewed to avoid any predetermination about which film is the one that is the subject of the lawsuit.